[No. 28687.   Department Two.   July 22, 1942.]

CLAIRE A. EVANS et al., *Respondents*, v. VIRGINIA HALL, *Appellant.*[1]

*L. B. Donley,* for appellant.

*Paul O. Manley,* for respondents.

BEALS, J.—Plaintiffs, Claire A. and Estella Evans, husband and wife, instituted this action against Virginia Hall, as defendant, seeking recovery of damages for injuries suffered by plaintiff Estella Evans, June 23, 1941, as the result of a collision between plaintiffs' automobile, which was being driven by Claire Evans, and a car driven by defendant.   December 21, 1941, the action was tried to the court sitting without a jury, and resulted in a judgment in plaintiffs' favor for thirty-five hundred dollars, on account of the injuries suffered by Mrs. Evans, together with $152.82, on account of damages to the Evans automobile, and

[1]Reported in 128 P. (2d) 327.

fifty dollars for medical expenses. From a judgment for the above amounts, entered in accordance with the findings of fact and conclusions of law, defendant has appealed.

Appellant raises no question as to the finding of the trial court that appellant was negligent, assigning error upon the amount of the judgment awarded by the trial court, contending that the allowance for damages on account of Mrs. Evans' injuries was excessive. Appellant also assigns error upon the allowance of fifty dollars by way of damages for respondents' expenses for medical attention, appellant contending that the record supports no award for such an item in excess of twenty-five dollars.

It appears that the Evans car was being driven in an easterly direction along Simpson avenue, in the city of Aberdeen, Mrs. Evans (who will hereinafter be referred to as though she were the only respondent) riding in the front seat with her husband, who was driving; that the car stopped in obedience to a traffic light, whereupon appellant's automobile, which was following the Evans car, ran into the back of that car, forcing the car into a collision with a car directly ahead. The shock of the collision broke loose the front seat of the Evans car, and Mrs. Evans was thrown violently, heels over head, against the back seat of the car.

Respondent was taken to a hospital, where she was examined by a physician, who, finding no broken bones, sent her home. A few days later, she again consulted the same physician, who told her that she had apparently sustained an injury to a nerve, prescribing rest. Mrs. Evans then consulted a chiropractor, who treated her for a considerable period of time thereafter.

Respondent testified that ever since the accident she has suffered from headaches, sleeplessness, nausea, and numbness in her arms and hands. She stated that she could perform only a portion of her necessary housework; that she was unable to keep boarders or lodgers, as she had theretofore done, and that she could do little or no sewing. She also testified that prior to the accident she had been strong and muscular, and engaged in such outdoor activities as clam digging (for commercial as well as personal purposes) and duck and deer hunting. The chiropractor who had attended respondent testified that, when he was first consulted by respondent, he took X rays of her spine, which are in evidence, finding, as he testified, that the atlas vertebra was subluxated, causing pressure on the nerves. He stated that he adjusted the vertebra to its normal position, but that it would not stay in place. He also stated that the condition of the vertebra could have been caused by the impact of the collision, and that, while it was impossible to state whether or not the injury was permanent, respondent was still suffering therefrom at the time of trial. Respondent's testimony concerning her physical condition before and after the injury was corroborated by several of her friends and neighbors, by her husband, and by her daughter.

Concerning respondent's injuries, the trial court found that Mrs. Evans

" . . . was violently thrown from her seat in said car, and she struck against the sides and front of said car in such a manner as to cause subluxation of the first vertebra of her spine, and she sustained thereby bruises and contusions about her body. That prior to the collision the said plaintiff, Estella Evans, was a healthy woman of thirty-two years, the mother of two children and able to perform all of her housework. That since said collision, and as a direct re-

sult thereof, said plaintiff has at all times since the collision suffered from a tingling sensation in both of her arms and hands extending from the finger tips to the base of the neck; that she suffers from severe aches in the head and back and is chronically nauseated. That as a result of said collision her nervous system has been seriously affected, and she suffers from insomnia. That since said collision said plaintiff is unable to do any housework except of the lightest nature, and she can no longer drive a car on account of her nervousness and the tingling sensation of her arms, although prior to the collision she was a competent and skillful driver. That said plaintiff, Estella Evans, has been under the care of a physician ever since said collision, and has incurred a reasonable expense of $50 for professional services. That at the time of the trial the physical condition of the said Estella Evans was only slightly better than during the period immediately after the accident, and it is reasonably probable that she will continue to suffer from the same for some years to come."

A physician and surgeon of long experience, testifying for appellant, stated that he had made thorough physical examinations of respondent, July 21, and August 2, 1941, taking two X-ray pictures, which were admitted in evidence. The witness examined the X rays taken by the chiropractor who treated respondent, testifying that these pictures showed no evidence of any abnormal condition of any vertebra. The witness also testified that the X rays which he took disclosed no abnormal condition. The witness testified that respondent's thyroid gland was slightly enlarged; that her blood pressure was normal; and that the regular reflex tests showed no nerve injury. He testified that in his opinion respondent had suffered a nervous shock, from which she would completely recover in time. He also testified that he found some muscle spasm which might have resulted from nervousness or shock. This witness testified on direct and cross-

examination at considerable length, his opinion being that respondent would completely recover her health within six or eight months.

There can be no question but that respondent experienced a very violent physical shock. Dr. Brockvogel, appellant's expert witness, testified that respondent was suffering from nervous shock, and that such an accident might result in respondent being in the condition which she herself described. On cross-examination, answering the question, "You have no way of saying definitely if she will ever recover, have you?" the witness answered:

"I don't think anyone could say 'yes' or 'no'. It is is only from what I said, comparison with that case and others injured in the same way, you know about the time it takes for them to get well."

■ Appellant argues that no award in respondent's favor, as compensation for her injuries, in excess of five hundred dollars should be allowed to stand. Clearly, such an amount would be entirely inadequate. Respondent's testimony as to her condition is supported not only by the testimony of members of her family, but by friends and neighbors. The chiropractor who treated respondent testified that it had been necessary to place the vertebra in proper position several times; that after each adjustment it would remain in place for a longer or shorter period, but would then slip out of alignment. He testified that it would reasonably be anticipated that respondent would eventually entirely recover, but that the time of her complete recovery was uncertain.

The trial court heard the evidence, and was in the best possible position to evaluate the same and determine the amount of weight to be accorded thereto. Appellant is called upon to respond in compensatory damages; this, appellant admits.

Appellant cites several of our decisions in which awards for personal injuries were reduced. Respondent cites other of our decisions in which this court refused to hold that awards were excessive.

In the case of *Ronald v. Pacific Traction Co.,* 65 Wash. 430, 118 Pac. 311, this court refused to reduce a judgment entered upon the verdict of a jury in favor of the plaintiff, seeking compensation for injuries resulting from a fall from a street car. This court said:

"Where it has appeared that verdicts are so excessive as to indicate that they may have been given under the influence of passion and prejudice, it has not been unusual for this and other courts to give the option of a voluntary remittitur of a part of the verdict. But in all such cases, we have had some guide or standard to which we could safely turn to measure the damages. In the case of injuries to the members, a court can take some notice of the fact that nature in a way restores the functional use of the injured member. But where, as in this case, the injury, if any at all, is to the nervous system, a possible lesion of the brain, which may result in epilepsy, a chronic neurasthenic condition, and has in fact resulted in deafness and impairment of vision, we are at a loss to say that the jury was not justified in rejecting the evidence offered by appellants to the effect that the only injury likely to be permanent was the loss of hearing, and that the neurasthenic condition would rapidly improve. The verdict will, therefore, be allowed to stand."

While in the case cited the evidence showed that the plaintiff had suffered a permanent loss of hearing in one ear, the language quoted is pertinent to the case at bar.

In the case of *Greene v. Union Pacific Stages, Inc.,* 182 Wash. 143, 45 P. (2d) 611, the plaintiff sued for damages suffered as the result of a collision between an automobile in which she was riding and a stage.

On the trial, she testified that as a result of the accident she had become very ,nervous, and suffered from other ailments. In the course of the opinion, we said:

"Regardless of her own subjective evidence and that of her doctor, there was ample and competent testimony by several lay witnesses showing a rapid decline in her nervous and physical condition following the accident.

"Manifestly, the jury had the right to believe the testimony of her physician and her lay witnesses supporting her case and to disbelieve the testimony of two medical experts on behalf of appellant. That being true, we cannot say that a verdict in her favor for the rather serious permanent injuries to her in the sum of four thousand dollars is excessive and indicates passion and prejudice on the part of the jury. Moreover, the jury and the trial judge saw her and her witnesses and were able to judge of their credibility on the conflicting testimony, which we are not."

The two cases above cited were appeals from judgments entered upon verdicts of juries, and appellate courts are less likely to interfere with judgments in jury cases than with judgments rendered in cases tried by the court. The language quoted, however, referring to the difficulties encountered in attempting to accurately estimate in damages the amount which should be paid as compensation for injuries which have resulted in nervous disorders, the testimony concerning which is necessarily subjective rather than objective, is relevant here.

While the amount awarded by the trial court seems large, in view of the record we cannot hold that it should be reduced. The court was required at the time of trial to make an estimate of the amount of compensation which respondent should receive by way of damages, and we find no basis for revising

this 'award.   The evidence does not preponderate against the court's findings.

Appellant argues that the evidence supports no award by way of medical expenses in excess of twenty-five dollars.   Respondent testified that she had paid the chiropractor, after receiving treatments from him for a month, twenty-five dollars, which included ten dollars for the X rays.   She testified that at first she was charged five dollars a week, and after that two dollars a treatment, and that she had been receiving the treatments up to the time of trial.   The record refers to twenty-two treatments, which with the cost of X rays would exceed the amount awarded by the court. There is no evidence concerning any charge for services by the physician who attended respondent immediately after the accident.   We find no basis for reducing the court's award for medical expense.

Judgment affirmed.

ROBINSON, C. J., BLAKE, MILLARD, and JEFFERS, JJ., concur.